**SO ORDERED.**

**SIGNED this 19 day of October, 2006.**



                                                 *Dale L. Somers*
                                             **Dale L. Somers**
                                **UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| WILLIAM MICHAEL STEVENS, <br> HOLLY LYNNA' STEVENS, | CASE NO. 05-10555-7 <br> CHAPTER 7 |
|                     DEBTORS. | |

### ORDER DENYING MOTION FOR SANCTIONS

This matter is before the Court following an evidentiary hearing on August 8, 2006, for resolution of a motion for sanctions filed by creditors Susan Miller and Bill Warren. The Creditors appeared by counsel Mark J. Lazzo. Their motion asks the Court to impose sanctions on debtor Holly Lynna' Stevens, who appeared by counsel Elizabeth A. Carson. The Court heard the evidence and arguments of counsel, has reviewed other relevant materials, and is now ready to rule.

**FACTS**

On February 11, 2005, with the help of attorney William H. Zimmerman, Jr., Dr. William Michael Stevens ("Dr. Stevens") and Holly Lynna' Stevens ("the Debtor") filed a joint Chapter 7 bankruptcy petition. Shortly after filing the petition, the couple reported that Dr. Stevens had monthly income of $10,000 from a professional medical association he owned, and that the Debtor had no income, although she was also reported to be the office manager for the association. They reported having seven dependents, children ages 7, 9, 13, 15, 18, 21, and 22. They reported owing a joint debt of $100,000 to William Warren, which the Court understands to be the debt the Creditors are owed.

On April 19, 2005, the Creditors filed an application to examine both the Debtor and Dr. Stevens, as authorized by Federal Rule of Bankruptcy Procedure 2004, and to require them to produce a variety of documents. The next day, the Court signed an order submitted by the Creditors that granted their application. According to a certificate of service filed by the Bankruptcy Noticing Center, copies of the order and an attachment specifying documents to be produced were mailed to the Debtor, to Dr. Stevens, and to their attorney, Mr. Zimmerman. The Creditors have not suggested any of these items were served on the Debtor other than by mailing copies to her home and to Mr. Zimmerman. Almost all the requested documents appear to concern Dr. Stevens's business ventures. Mr. Zimmerman contacted the Creditors' attorney and obtained an agreement for more time to produce the documents and to postpone the examinations.

One month after seeking the 2004 exams, on May 19, the Creditors filed a motion to compel Dr. Stevens and the Debtor to produce the requested documents and to appear

2

to be questioned. This motion was served by mailing a copy to Mr. Zimmerman. At a hearing on the motion, Mr. Zimmerman appeared for Dr. Stevens and the Debtor, who were given until July 8 to produce the requested documents. They were expected to be available for the 2004 exams during the last week of July, although it was noted that Mr. Zimmerman could present a motion if they would not be available. A written order reflecting the rulings made at the hearing was entered on June 27.

On July 28, 2005 (during the week when the Debtors were supposed to appear for questioning), an agreed nondischargeable judgment for $100,000 was entered against Dr. Stevens in favor of the Creditors in Adversary No. 05-5600. The Debtor was not a party to that proceeding. The complaint commencing the proceeding alleged the Creditors had given Dr. Stevens money he was supposed to hold in trust and use to establish and operate a new company, but that he instead used their money to pay other expenses. Nothing in the complaint suggested the Debtor participated in the misuse of the money.

In September 2005, the Creditors filed another motion to compel the Debtor to comply with the order to produce documents and to appear for a 2004 exam, serving a copy by mailing it to Mr. Zimmerman. This motion did not ask for any sanctions to be imposed on the Debtor. No response was filed, and on October 19, the Court signed an order granting the motion to compel, which gave the Debtor until October 31 to produce documents and directed her to appear on November 14 for a 2004 exam. The Bankruptcy Noticing Center mailed a copy of this order to the Debtor at her home address.

3

On November 1, 2005, Mr. Zimmerman filed a motion to withdraw as counsel for the Debtor and Dr. Stevens. He noted that since their bankruptcy filing, the couple had become involved in divorce proceedings, and indicated it was obvious to him that he could not adequately represent both of them because of irreconcilable conflicts. The motion was served on the Debtor by certified, registered mail sent to a post office box, but the mail was signed for by someone named Carol Sue Wilkerson.[1] An order granting the motion to withdraw was entered on December 8.

Two weeks after Mr. Zimmerman filed his motion to withdraw, the Creditors filed a motion to compel and for sanctions. They pointed out the Debtor's failure to produce requested documents and her failure to appear for her 2004 exam, and asked the Court (1) to enter a judgment against her for $100,000 plus interest, and costs of $150, (2) to declare that judgment to be nondischargeable, and (3) to award the Creditors' attorney fees and expenses for having to file the motion.

It is clear the Debtor learned of Mr. Zimmerman's withdrawal because she hired Elizabeth A. Carson, who entered her appearance as new counsel for the Debtor on January 9, 2006. A week later, the Debtor filed a notice changing her address. The Creditors concede the Debtor produced the documents they sought on March 23, 2006. The Debtor indicated she also proposed dates when she would be available for a 2004 exam, but the Creditors apparently decided they no longer needed to question her. The

---

[1] Wilkerson appears to be the Debtor's maiden name, so the person who signed for the mail was probably a relative of hers.

Creditors concede they decided not to pursue a dischargeability claim against the Debtor because they already had the agreed judgment against Dr. Stevens, and wished to avoid the expense of continuing to pursue the claim against the Debtor.

The Debtor testified that when she and Dr. Stevens filed for bankruptcy, he was in charge of and directed all their family's financial affairs, and that she had no access to any documents concerning their finances while they were married. She was the primary caretaker for her seven children. Dr. Stevens did not allow the Debtor or any of her children to get mail that was delivered to their home while she and the doctor were married. On occasion, she signed for mail deliveries, but when she did that, she would not open the mail but simply place it in a basket for Dr. Stevens. Even after Dr. Stevens moved out of the home in June 2005, he continued to pick up all the mail that was delivered there. The Debtor said Dr. Stevens was in charge of dealing with Mr. Zimmerman and always assured her that the attorney was taking care of matters in their bankruptcy case. She met Mr. Zimmerman personally only twice, once in his office and once in the basement of the courthouse. Because Dr. Stevens controlled the mail and their contact with Mr. Zimmerman, the Debtor said she never received any subpoena or other notice or order directing her to appear for an examination or to produce any documents. She indicated Dr. Stevens never told her she was supposed to produce any documents or appear for questioning. She admitted she could have contacted Mr. Zimmerman herself, but assumed Dr. Stevens and Mr. Zimmerman were acting in her best interest with respect to the bankruptcy case, even after she realized in about April

5

2005 that Dr. Stevens was not always acting to protect her interests in other areas. She admitted a lack of trust had developed in their relationship by April 2005.

In August 2005, the Debtor moved out of the family home because a foreclosure action against it became final. During September, she and her children lived in a hotel, and she received no mail there. She moved into an apartment in October 2005. The Debtor testified that she had no access to the family's financial records, and those she was able to produce after she hired Ms. Carson were very limited. As indicated, the Creditors concede that in March 2006, the Debtor produced the documents they sought from her.

The Creditors offered no evidence to contradict any of the Debtor's testimony, and the Court found her to be a credible witness.

The Creditors obtained numerous extensions of the time to file a complaint objecting to the Debtor's discharge or to the dischargeability of her debt to them. The last extension was granted on April 20, 2006, and gave them until May 15 to file such a complaint. That time has passed, and the Creditors have not filed a complaint or sought another extension of time.

**DISCUSSION**

In seeking sanctions, the Creditors rely Federal Rule of Civil Procedure 37(b)(2)(C), which is made applicable to adversary proceedings by Bankruptcy Rule 7037. As relevant here, Rule 37(b)(2) provides:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

6

>                    . . .
>                    (C) An order . . . rendering a judgment by default against
>            the disobedient party;
>                    . . .
>            In lieu of any of the foregoing orders or in addition thereto, the court shall
>    require the party failing to obey the order . . . to pay the reasonable expenses,
>    including attorney's fees, caused by the failure, unless the court finds that the
>    failure was substantially justified or that other circumstances make an award of
>    expenses unjust.

Since filing their motion for sanctions, the Creditors have dropped their effort to obtain a nondischargeable judgment against the Debtor, the part of their sanctions request based on subparagraph (C) of Rule 37(b)(2), but they continue to press for an award of their expenses under the unlettered paragraph at the end of Rule 37(b)(2). Under that paragraph, the Court must award them their expenses unless it finds that the Debtor's failures to produce documents and appear for a 2004 exam were "substantially justified" or that such an award would otherwise be "unjust." While the norm under this provision is to require the party who failed to obey a discovery order to pay the opposing party's expenses, the Court does retain some discretion to refuse to award them.[2]

The evidence presented to the Court shows that until Mr. Zimmerman withdrew and the Debtor hired Ms. Carson, the Debtor herself did not become aware of the Creditors' efforts to obtain documents and testimony from her, or of the orders requiring her to produce the documents and to appear to be questioned. Instead, Dr. Stevens

---

[2]*See* 8A Wright, Miller & Marcus, *Fed. Prac. & Pro.: Civil 2d*, § 2288 at 664 (expense award is mandatory under Rule 37(a)(4) unless one of specified conditions exists, but conditions are broad enough that court retains some discretion in the matter) & § 2289 at 673-74 (expense-award provision in Rule 37(b)(2) is similar to the one in Rule 37(a)(4), so treatise's discussion there applies to (b)(2) as well).

7

controlled all communications from Mr. Zimmerman and from the Court, and failed to inform the Debtor of these requirements. A party can hardly be expected to comply with orders she is not aware of. In any event, it is clear that Dr. Stevens maintained and controlled essentially all the documents the Creditors wanted to obtain, so the Debtor's failure to produce documents caused them little or no harm.

The Creditors do not dispute these facts. Instead, they argue that because the Debtor admitted a lack of trust developed in her marriage by April 2005, it was unreasonable for her to continue after that to rely on Dr. Stevens to protect her interests in their bankruptcy case. They also point out that the Debtor admitted she could have contacted Mr. Zimmerman directly at any time. These considerations carry some weight with the Court. However, other considerations, coupled with the Debtor's lack of actual knowledge of the discovery requests, overcome them.

When the Debtor and Dr. Stevens filed for bankruptcy, they had five children living at home; the Debtor also had two older children who were away at college but came home to live with her during the summer of 2005. She was the primary caretaker for all the children. Nothing was presented to indicate that the Debtor had any way to provide for their financial needs except with help from Dr. Stevens, so the Court is not surprised that she assumed he would continue to help her with the bankruptcy case as well. The Court can also understand why, with her marriage breaking down, the Debtor might have been more concerned about her family's present and future financial situation than about the past situation involved in the bankruptcy case. Finally, after Mr.

Zimmerman withdrew and the Debtor hired her own attorney, independent from Dr. Stevens, and found out the Creditors were trying to obtain information from her, she supplied the few documents she had and gave the Creditors dates when she could appear to answer questions, although they decided, in the end, not to question her.

Under the circumstances, while it would have been preferable for the Debtor to make sure she was personally informed about events in the bankruptcy case, the Court concludes it would be unjust to require her to pay attorney fees the Creditors incurred because Dr. Stevens chose to keep her in the dark. This conclusion is reinforced by the fact the Court has not been advised of any income or other resources the Debtor would have available to enable her to pay those fees. Consequently, the Creditors' motion for sanctions is denied.

# # #